UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


| | | |
|---|---|---|
| LISA M. CHAPMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04-CV-237 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| AMSOUTH BANK | ) | |
| | ) | |
| Defendant. | ) | |


## **M E M O R A N D U M**

Before the Court is Defendant AmSouth Bank's ("AmSouth") "Renewed Motion for
Judgment as a Matter of Law, and/or Motion for a New Trial and/or Remittitur" (Court File No.
123). AmSouth filed a brief in support of its motion (Court File No. 124), Plaintiff Lisa M.
Chapman ("Plaintiff") filed a response (Court File Nos. 128, 129), and AmSouth filed a reply
(Court File No. 133). After careful consideration of the above and for the following reasons, the
Court will **DENY** AmSouth's motion.


## I.     RELEVANT FACTS

Plaintiff began working for AmSouth as a financial service associate in 1999. While
employed at AmSouth Plaintiff received a sexual harassment policy and training on the policy. The
policy provided numbers to call if an employee wanted to report concerns of harassment. Further,
the policy stated an employee could report his or her concerns of harassment to a supervisor or
higher management. In April 2003 Plaintiff began working at the Brainerd South branch where

Randy Moore ("Moore") was the manager and Cindy Black Vincent ("Vincent") was the assistant

manager. Starting sometime in early summer 2003 and ending in September 2003, the following

inappropriate conduct took place:

(1)     Moore would pull at his crotch every time he was in the branch;
(2)     Moore would grab Plaintiff's arm and rub her shoulders;
(3)     Moore would hug Plaintiff from the side and roll her in so that Plaintiff's breast would touch his chest;
(4)     While Plaintiff was standing at Moore's desk, Moore stated, in reference to a female customer, he would "like to get a hold of that"; and
(5)     Moore told Plaintiff and Vincent about the amount of sex he was having with his wife.

Plaintiff was ashamed and humiliated by Moore's conduct. She had trouble getting out of bed on

time and she began to uncharacteristically fuss and fight with her husband, Mitchell D. Chapman

("Mr. Chapman"). Mr. Chapman described Plaintiff as being withdrawn and generally a different

person during the time Plaintiff was subjected to Moore's inappropriate conduct. Mr. Chapman

testified Plaintiff did not get back to normal until the summer of 2005.

Plaintiff did not complain to Moore's supervisor or to anyone in higher management. She

did not call the numbers listed in the sexual harassment policy. Plaintiff lost her copy of the

harassment policy. Plaintiff did speak with Vincent about Moore's crotch grabbing and about

Moore's comments regarding his sex life with his wife. Also, on one occasion Plaintiff told Moore

to stop grabbing his crotch when he was near her. Eventually, Plaintiff searched AmSouth's intranet

to find a number to call to report Moore. She found a 1-800 number and called it to complain about

Moore. The person who took the call instructed Plaintiff to contact her local human resource

department. Plaintiff did not call her local human resource department in part because Moore was

good friends with his boss, Jeff Standridge ("Standridge"), and Moore's wife was a senior Area

Branch Operations Manager ("ABOM"). Further, Plaintiff knew Vincent had complained to human

resources about Moore on a previous occasion but no action was taken. Also, Moore had a bad temper. In September 2003, Plaintiff went to her husband and told him about Moore's conduct. Shortly thereafter, Plaintiff turned in her resignation letter. This letter referred to Moore's unethical business practices and to comments made by Moore about his personal life.[1]

Immediately after receiving Plaintiff's resignation letter, the local human resources manager, Don Griffin ("Griffin"), began an investigation. Vincent and Plaintiff informed Griffin about Moore's comments regarding his sex life with his wife and Moore's unethical business practices. A few days later Griffin accepted Moore's resignation and convinced Plaintiff to remain employed at the bank.

On June 24, 2004 Plaintiff filed suit against AmSouth claiming she was sexually harassed and retaliated against in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 to 4-21-1004. The trial began on October 11, 2005. At the close of Plaintiff's case, AmSouth moved for judgment as a matter of law on Plaintiff's harassment and retaliation claims. The Court dismissed the retaliation claim, but allowed the harassment claim to proceed. The jury returned a verdict in favor of Plaintiff in the amount of $75,000. AmSouth now moves the Court to grant judgment as a matter of law and/or new trial and/or remittitur.

## II.     STANDARD OF REVIEW

### A.     Motion for Judgment as a Matter of Law

Motions for judgment as a matter of law are governed by Fed. R. Civ. P. 50, which provides

---

[1] AmSouth admits in its brief that the resignation letter constituted a sexual harassment complaint under the policy (*See* Court File No. 124, pp. 10, 12-13).

in pertinent part:

> (a) Judgment as a Matter of Law.
>
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed. R. Civ. P. 50(a). When a Rule 50 motion is denied at trial and the moving party seeks to renew

the motion after trial, Rule 50(b) applies. Rule 50(b) provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion not later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
>
> > (1) if a verdict was returned:
> > (A) allow the judgment to stand,
> > (B) order a new trial, or
> > (C) direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). "A federal court exercising its diversity jurisdiction applies the standard for

a directed verdict used by the courts of the state whose substantive law governs the action."[2] *Arms*

*v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1248 (6th Cir. 1984); *see also Mosely v. Kelly*, 65

---

[2]A motion for a judgment notwithstanding the verdict or a directed verdict is a motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50, Advisory Committee Notes, 1991 Amendment ("If a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule.").

4

F. Supp. 2d 725, 728 (E.D. Tenn. 1999). "A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion." *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). A federal court in Tennessee must allow a jury verdict to stand unless it is clearly insupportable on the evidence in the record as viewed in the light most favorable to the prevailing party:

> The rule for determining a motion for directed verdict requires the trial Judge and reviewing Court on appeal to look to all the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, to allow all reasonable inferences from it in his favor and to discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied.

*Ridley v. Spence*, 456 S.W.2d 846, 848 (Tenn. Ct. App. 1970); *see also Vaughn v. Shelton*, 514 S.W.2d 870, 873 (Tenn. Ct. App. 1974).

### B.      Motion for New Trial

A federal court sitting in diversity applies the federal standard in determining whether to grant a new trial. *Arms*, 731 F.2d at 1248 n.2; *Mosley*, 65 F. Supp. 2d at 728. The standard of review for a motion for new trial is well established. Under Fed. R. Civ. P. 59, a court may set aside a jury verdict and grant a new jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Courts have generally interpreted this language to allow a new trial when a jury has reached a "seriously erroneous result," which may occur when (1) the verdict is against the weight of the evidence; (2) the damages are excessive; or (3) the trial was unfair to the moving party in some fashion (i.e., the proceedings being influenced by prejudice or bias). *Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir. 1996) (citations omitted). A court exercises its discretion in disposing of a motion for new trial. *See Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996); *Davis v. Jellico Cmty.*

5

*Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (limiting a court's responsibility to preventing an injustice). The district court's decision is reviewed for an abuse of discretion. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000). Reversal is warranted only if the appellate court has "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

"New trials are not to be granted on the grounds that the verdict was against the weight of the evidence 'unless that verdict was unreasonable.'" *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000) (quoting *Holmes*, 78 F.3d at 1047). "[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* at 821 (citing *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.1967)). Hence, as long as a reasonable juror could have reached the challenged verdict, a new trial is improper. *Id.* (citing *Holmes*, 78 F.3d at 1048).

"A verdict is not excessive unless it exceeds 'the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss.'" *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 424-25 (6th Cir. 1999) (quoting *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993)). "An award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 443 (6th Cir. 2000) (citing *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996)).

Since this case was tried before this Court based upon diversity of citizenship, the Court relies upon Rule 59. Pursuant to Rule 59, the Court has discretion if the verdict is against the clear

6

weight of the evidence. However, in assessing whether the verdict is adequate or not the Court is governed by Tennessee law. *See Medcom Holding Co. v. Baxter Travenol Labs.,* 106 F.3d 1388, 1397 (7th Cir. 1997); *West v. Media Gen. Operations, Inc,* 250 F. Supp. 2d 923, 940 (E.D. Tenn. 2002). When the Court sits in diversity we must use the "damage-control standard" supplied by state law. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 438-39 (1996); *Konkel v. Bob Evans Farms, Inc.,* 165 F.3d 275, 280 (4th Cir.), *cert. denied,* 528 U.S. 877 (1999); *Tatum v. Land,* 107 F.3d 871 (Table, text at 1997 WL 85144, at *3, n.8 (6th Cir. Feb. 26, 1997)); *Bivens v. Black,* 35 F. Supp. 2d 607, 609-11 (E.D. Tenn. 1999). The *Gasperini* case holds that federal trial judges sitting in diversity cases must use the same degree of control over the size of jury verdicts on damages as is granted to state trial judges under the governing state substantive law. *Bivens,* 35 F. Supp. 2d at 610.

Under Tennessee law, a state trial judge exercises the function of what is commonly referred to as a "thirteenth juror" by independently weighing the evidence and determining whether the evidence preponderates in favor of or against the jury's verdict. *Bivens,* 35 F .Supp. 2d at 610-11; *Turner v. Jordan,* 957 S.W.2d 815, 823 (Tenn. 1997); *Shivers v. Ramsey,* 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996). "Although the amount of damages is primarily an issue for the jury to decide, trial judges in Tennessee are given considerable discretion in ordering new trials if they determine that the verdict is against the weight of the evidence or if the decision not to order a new trial would result in a miscarriage of justice." *West*, 250 F. Supp. 2d at 941 (citing *Bivens*, 35 F. Supp. 2d at 610-11).

### C.      Remittitur

Short of ordering a new trial, a court may reduce a jury award pursuant to Rule 59(e) if the

award "clearly exceeds" the maximum amount a jury reasonably could have found was necessary to compensate the prevailing party for its loss. *Slayton v. Ohio Department of Youth Services*, 206 F.3d 669, 679 (6th Cir. 2000); *see also Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994). The court may reduce the award only if it is "(1) beyond the range supportable by proof, (2) so excessive as to shock the conscience, or (3) the result of mistake." *Slayton*, 206 F.3d at 679; *see also Farber v. Massillon Bd. of Ed.*, 917 F.2d 1391, 1395 (6th Cir. 1990) (holding remittitur is appropriate if the award results from passion, bias, or prejudice); *Cathey v. Johns-Manville Sales Corp.*, 776 F.2d 1565, 1572 (6th Cir. 1986) (holding remittitur is appropriate only if the award is "shocking or contrary to all reason"). Remittitur is not appropriate simply because an award is "extremely generous"; rather, it is allowed only when an award is "grossly disproportionate" to the adduced evidence. *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir.1999), *cited in Slayton*, 206 F.3d at 679-80. In making its determination, the court must review the evidence in a light most favorable to the prevailing party. *Jackson*, 31 F.3d at 1359 (citations omitted). Finally, a court's decision to grant or deny remittitur is reversible only for abuse of discretion. *Slayton*, 206 F.3d at 679; *Jackson*, 31 F.3d at 1359; *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

## III.  DISCUSSION

### A.  Judgment as a Matter of Law

At the close of Plaintiff's proof, AmSouth moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on Plaintiff's claims for sexual harassment and retaliation. The Court dismissed the retaliation claim but allowed the sexual harassment claim to proceed. The jury

rendered a verdict in favor of Plaintiff. AmSouth now renews its motion for judgment as matter of

law pursuant to Fed. R. Civ. P. 50(b). AmSouth argues Plaintiff's hostile work environment sexual

harassment claim, brought pursuant to the THRA, must fail because (1) Plaintiff was not subjected

to sexual harassment; (2) AmSouth established its affirmative defense; and (3) the evidence does

not support an award of compensatory damages. The Court will address each of these arguments

in turn and for the following reasons, the Court will **DENY** AmSouth's motion for judgment as a

matter of law.

### 1.    Hostile Work Environment Sexual Harassment

A plaintiff may establish a violation of the THRA by proving an employer's

discrimination based on sex created a hostile or abusive work environment. *See Meritor Savings

Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir.

1997); *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999). To make out a claim

of hostile work environment sexual harassment, a plaintiff must present sufficient evidence to prove

the following five elements:

> (1) plaintiff is a member of a protected class;
>
> (2) plaintiff was subjected to unwelcome harassment;
>
> (3) the harassment complained of was based upon plaintiff's sex;
>
> (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and
>
> (5) the employer is vicariously liable

*See Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999).[3] AmSouth argues Plaintiff did not

---

[3] The Tennessee Supreme Court has repeatedly recognized the application of federal law to
THRA cases. *See, e.g.*, *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834-35 (Tenn. 1997)
("Although the language of Title VII and the THRA differ slightly, it is clear that the legislature
intended the THRA to be coextensive with federal law. We, therefore, may look to federal

present sufficient evidence to satisfy elements (3) or (4).

### (a)     Based Upon Plaintiff's Sex

Under the THRA, it is unlawful for covered employers to "[f]ail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment *because of such individual's . . . sex . . . .*" Tenn. Code Ann. § 4-21-401(1) (emphasis added). The THRA does not prohibit all verbal or physical harassment in the workplace, rather it prohibits discrimination based on one's sex. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463-64 (6th Cir. 2000) Thus, if the conduct underlying a plaintiff's sexual harassment claim is not based upon a plaintiff's sex, it is not actionable. However, the underlying conduct does not necessarily have to be sexual in nature. "Non-sexual conduct may be illegally sex-based and properly considered in a hostile work environment analysis where it can be shown that but for the employee's sex, [s]he would not have been the object of harassment." *Bowman*, 220 F.3d at 463; *see also Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 33 (Tenn. 1996) (stating "conduct underlying a hostile environment claim need not be clearly sexual in nature").

AmSouth contends the sidearm hugs, crotch grabbing, and shoulder rubbing were not sexual in nature and therefore cannot be considered in the hostile environment analysis. The Court disagrees. The jurors, in the context of this case, could have construed the sidearm hugs, crotch grabbing, and shoulder rubbing to be sexual in nature.

---

interpretation of Title VII for guidance in enforcing our own anti-discrimination statute. We, however, are neither bound by nor limited by federal law when interpreting the THRA") (citations omitted); *Frizzell v. Southwest Motor Freight Co.*, 154 F.3d 641, 646 (6th Cir. 1998); *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999). Therefore, the Court analyzes Plaintiff's THRA sexual harassment claim under the relevant federal standards.

10

Moore's sidearm hugs were more than the average sidearm hug. When Moore sidearm hugged Plaintiff he would roll Plaintiff into his body so that her breast would touch his body. This clearly can be construed as sexual in nature. As for the crotch grabbing, it is possible Moore just had a tick or was readjusting himself in a non-sexual manner. However, the jury had enough evidence to interpret the crotch grabbing to be sexual in nature. Rather obviously, when Moore would grab his crotch he would draw attention to his genitals. Plaintiff demonstrated at trial how Moore would grab his mid-section. Although Plaintiff's demonstration may have convinced one juror the grabbing was non-sexual it may have convinced another juror the grabbing was sexual in nature. Also, Vincent testified the crotch grabbing violated the bank's sexual harassment policy suggesting the crotch grabbing had sexual overtones. Lastly, the crotch grabbing occurred near the same time as the touching and sexual comments. Thus, in this case, Moore's crotch grabbing could have reasonably been construed by the jury as sexual in nature.

The shoulder rubbing could also reasonably be construed as sexual in nature. The Sixth Circuit's decision in *Bowman*, 220 F.3d at 463-464 is instructive. In *Bowman*, the Sixth Circuit noted that the district court did not consider a shoulder rub as part of the hostile work environment analysis because the shoulder rub "was ambiguous and of no evidentiary value absent some other evidence suggesting that it should be considered a harassing act." *Id.* at 463. The shoulder rub only lasted one or two seconds and the next alleged incident of harassment happened six months later. *Id.* However, the Sixth Circuit specifically noted that unlike the district court it was including the shoulder rub in its hostile work environment analysis. *Id.* at 464. Here it is unclear exactly how long the shoulder rubbing lasted but it is safe to say Moore's hands were on Plaintiff's shoulders more than one second. Further, the shoulder rubbing happened near the same time as the other

incidents of harassment. Therefore, the jury could reasonably consider the shoulder rubbing to be sexual in nature.[4]

### (b)    Severe and Pervasive

Next, AmSouth contends insufficient evidence was presented at trial to prove Plaintiff was subjected to an *objectively* hostile or abusive work environment (Court File No. 124, pp. 4-9).[5]  Specifically, AmSouth states the harassment was not severe or pervasive.  The Court rejected this argument at the summary judgment stage, at the close of Plaintiff's proof, and now the Court rejects AmSouth's argument a third time.  In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993), the Supreme Court considered the definition of a hostile work environment.  With respect to the severity of the conduct required to be actionable under Title VII, the Court stated:

> [M]ere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview.  Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

But Title VII comes into play before the harassing conduct leads to a nervous

---

[4] Since the Court concludes the sidearm hugs, crotch grabbing, and shoulder rubbing could each be construed as sexual in nature, it need not determine whether the conduct was directed only at females and motivated by discriminatory animus against women. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 797 (6th Cir. 2000).

[5] AmSouth argues in its brief, in a footnote, that Plaintiff may not have subjectively perceived her environment as hostile or abusive (Court File No. 124, p. 9, n. 4).  This argument is without merit.  Mr. Chapman testified at trial how much of a different person Plaintiff was when Moore was harassing Plaintiff.  Further, Plaintiff perceived her situation to be so bad she attempted to call a 1-800 number to complain and she turned in a resignation letter.  Thus, the Court has no trouble in concluding sufficient evidence was presented at trial for a reasonable juror to conclude Plaintiff subjectively perceived her environment to be hostile or abusive.

12

breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. . . .

. . . Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive there is no need for it also to be psychologically injurious.

This is not, and by its nature cannot be, a mathematically precise test. We need not answer today all the potential questions it raises.... But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 510 U.S. at 21-23.

Simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *See Clark County School District v. Breeden,* 532 U.S. 268, 271 (2001)*; Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). In any given case, "[t]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether — taken together — the reported incidents make out such a case. The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility." *Bowman*, 220 F.3d at 463 (citations omitted).

Looking at the incidents of harassment as a whole, the Court believes Moore's behavior

could reasonably be viewed as more than simple teasing, offhand comments, or isolated incidents. Each incident of harassment took place in about a four month period of time  Many incidents of harassment occurred on a frequent basis.  For example, the crotch grabbing happened every time Moore came into the branch which was about four times a week.  Also, Moore did more than make a few offensive remarks, he caused Plaintiff's breast to touch his chest, rubbed Plaintiff's shoulders, and touched Plaintiff's arm.  In short, enough evidence was presented by Plaintiff for a reasonable juror to concluded the incidents of harassment, taken as a whole, were severe and pervasive enough to constitute sexual harassment under the THRA.

### (2)  Affirmative Defense

An employer defending a sexual harassment suit under the THRA may raise an affirmative defense as long as no tangible employment action has been taken.  *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999).  The affirmative defense requires the employer to prove:

(1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

(2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer, or the employee unreasonably failed to otherwise avoid the harm.

*Id.* at 176-77.

In this case, no tangible employment action took place so AmSouth was free to raise the affirmative defense.  AmSouth argues it established its affirmative defense.  Looking at the evidence in the best possible light for Plaintiff, the Court concludes a reasonable juror could find AmSouth did not satisfy the second element of the affirmative defense.  The second element of the affirmative defense requires the fact finder to determine whether the plaintiff *unreasonably* failed to take

14

advantage of any preventative or corrective opportunities provided by the employer. Plaintiff gave several reasons for not reporting Moore's harassing behavior prior to her resignation letter. These reasons are summarized as follows:

(1) Moore's wife was employed by AmSouth as a Senior Area Branch Operations Manager;

(2) Moore was very good friends with his immediate supervisor Standridge;

(3) Standridge previously had sex with a subordinate employee;

(4) Vincent previously complained to human resources about Moore regarding his business practices and his comments about his sex life but no action was taken;

(5) Plaintiff did speak with Vincent about Moore's crotch grabbing and Moore's comments about his sex life but no action was taken;

(6) Moore had a violent temper;

(7) Plaintiff could not find her copy of the sexual harassment policy which listed the numbers to call to report sexual harassment; and

(8) Plaintiff tried to report Moore by calling a company 1-800 number she found on AmSouth's intranet but she was told to contact the local human resource manager.

Each of the above reasons given by Plaintiff do not *per se* make Plaintiff's decision not to take advantage of AmSouth's sexual harassment policy reasonable. In fact, AmSouth adequately points out the weaknesses in each of Plaintiff's proffered reasons. For example, although Plaintiff may have lost her copy of the sexual harassment policy, a copy of the policy was in the break room. However, even though the Court is not entirely convinced by Plaintiff's reasoning, it will only step in if it believes the jury could have only reached one conclusion. The Court will not step in here. Plaintiff has presented sufficient explanations for a reasonable juror to conclude Plaintiff acted reasonably in not taking advantage of AmSouth's sexual harassment policy.

### (3)    Damages

The THRA allows a plaintiff to recover damages for "humiliation and embarrassment." Tenn. Code Ann. § 4-21-306(a)(7). In this case the jury awarded Plaintiff $75,000

for her embarrassment, humiliation, mental anguish, and emotional distress. AmSouth does not contest the ability of the jury to award these types of damages when the THRA is violated. However, AmSouth argues a $75,000 verdict in this case was not supported by the evidence.

The amount of evidence presented at trial with respect to damages was relatively small, nevertheless, the Court concludes enough evidence was put forth to sustain the $75,000 verdict. Moore did not harass Plaintiff for just a few days. The harassing behavior consistently took place for approximately four months. *Compare Slayton v. Ohio Dept. of Youth Services*, 206 F.3d 669, 679-80 (6th Cir. 2000) (refusing to find damages excessive where plaintiff experienced continuous harassment for four months), *with Barna v. City of Cleveland*, 1998 WL 939884, at * 5 (6th Cir. 1998) (finding jury award excessive in part because plaintiff was only harassed for three weeks). Further, Plaintiff testified she was ashamed and humiliated by Moore's behavior and she was really scared about having to work call nights with Moore. As a result of Moore's behavior, Plaintiff became so upset she felt she had no other option but to resign. Also, Mr. Chapman testified that when Moore started to harass Plaintiff, she became very withdrawn and almost a different person. Instead of being loving and caring, she would fuss and fight. Plaintiff also had trouble getting out of bed during the time she was being harassed. Mr. Chapman described Plaintiff as hurt. According to Mr. Chapman, Plaintiff did not get back to normal until around June 2005.

It is true Plaintiff did not consult with a counselor, psychologist, psychiatrist, or health care practitioner, but such evidence is not required. *See, e.g., Thompson v. City of Lavergne*, 2005 WL 3076887, at * 12-13 (Tenn. Ct. App. Nov. 16, 2005) (slip opinion) (allowing recovery for humiliation and embarrassment without medical evidence); *see also Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (stating "[i]t is well settled that Title VII plaintiffs can prove emotional

16

injury by testimony without medical support"). It is also true when Plaintiff was asked at trial why she filed the current lawsuit she stated "I don't want this happening to anyone else." Therefore, it is theoretically possible the jury's award was a response to Plaintiff's statement and therefore improper.[6] However, the Court is unwilling to conclude the jury's award was to deter future harassment. The jury was given the option to award compensatory damages if it found AmSouth violated the THRA. The Court clearly instructed the jury that the purpose of compensatory damages is to compensate a plaintiff for the elements of damage she has or will experience. The jury was not instructed it could award damages to deter future harassment. Further, there is no evidence the jury ignored the Court's instruction and awarded damages to deter future conduct. If the damage award was significantly higher, the Court might reach a different conclusion, but a $75,000 award in this case was well within the range of reasonableness; therefore, the Court will not grant AmSouth's motion for judgment as a matter of law based on the amount of damages awarded in this case. *See Thompson*, 2005 WL 3076887, at * 13 (stating "damages for humiliation and embarrassment in [THRA] cases is peculiarly within the province of the jury subject to the rule of reasonableness").

## B.    New Trial

Since the Court will not grant Plaintiff's motion for judgment as a matter of law, it must now address AmSouth's request for a new trial. AmSouth argues a new trial is warranted because (1) the verdict in this case was contrary to the clear weight of evidence and (2) the damages award was excessive.

---

[6] The Supreme Court of Tennessee has interpreted the THRA in such a way that punitive damages are only available for claims involving discriminatory housing practices and malicious harassment. *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 34 (Tenn. 1997). Therefore, if the jury in this case awarded damages to deter future conduct, such an award would be inappropriate.

17

### 1.      Contrary to Clear Weight of Evidence

AmSouth argues the clear weight of evidence demonstrates (1) Plaintiff was not subjected to actionable sexual harassment, and (2) AmSouth established its affirmative defense. Unlike the motion for judgment as a matter of law, in analyzing a new trial motion the Court is required to compare the opposing proof, weigh the evidence, and set aside the verdict if the Court concludes the verdict is against the clear weight of the evidence. *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991); *TCP Indus., Inc. v. Uniroyal, Inc.* 661 F.2d 542, 546 (6th Cir. 1981). The standard used in evaluating the weight of the evidence under Rule 59(a) is "lower than when evaluating the sufficiency of the evidence for judgment as a matter of law." *Miller v. Alldata Corp.*, 14 Fed. Appx. 457, 464 (6th Cir. 2001). The Court must "deny the [new trial] motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id.*

AmSouth makes almost the identical arguments in support of its new trial motion that it made in support of its motion for judgment as a matter of law. After considering all of the evidence presented at trial, the Court concludes the jury verdict was not against the clear weight of evidence. This is not to say reasonable minds could have differed or that AmSouth failed to present persuasive evidence. It simply was reasonable for the jury to conclude Plaintiff was subjected to actionable sexual harassment and the affirmative defense was not proven by a preponderance of the evidence by AmSouth. Plaintiff presented several incidents of harassment that could reasonably be considered severe and pervasive and based on her sex. Further, it was reasonable for the jury to conclude AmSouth did not establish the second element of the affirmative defense. Plaintiff gave

several reasons as to why she did not report Moore's behavior earlier. Accordingly, the Court will **DENY** AmSouth's motion for a new trial based on the clear weight of evidence argument.

### 2. Excessive Damages

Again, similar to AmSouth's motion for judgment as a matter of law, AmSouth argues a new trial should be granted because the jury's damage award is excessive. Under Tennessee law, "judges are given considerable discretion in granting new trials if they are dissatisfied with the...excessiveness of a verdict." *Bivens v. Black*, 35 F. Supp. 2d 607, 610 (E.D. Tenn. 1999). Under the traditional federal standard, "it is the duty of a trial judge to set aside a verdict and grant a new trial if the judge is of the opinion that the verdict is against the great weight of the evidence...." *Id.* Applying the more relaxed Tennessee standard or the traditional federal standard leads the Court to the same conclusion. The jury award in this case does not warrant a new trial. The jury was entitled to assess the proof and it obviously determined Plaintiff was subjected to unlawful sexual harassment and AmSouth did not prove by a preponderance of the evidence its affirmative defense. The jury's decision to award $75,000 was reasonable and supported by the evidence. Therefore the Court will **DENY** AmSouth's motion for a new trial based on the excessiveness of the damages argument.

### C. Remittitur

Since the Court previously concluded AmSouth is not entitled to judgment as a matter of law or to a new trial, it will now address AmSouth's motion for remittitur. The Court has the ability to reduce a jury award if the award "clearly exceeds" the maximum amount a jury reasonably could have found was necessary to compensate the prevailing party for its loss. *Slayton v. Ohio Dept. of*

*Youth Services*, 206 F.3d 669, 679 (6th Cir. 2000).[7]  The jury verdict in this case, while higher than expected, does not "clearly exceed" the maximum amount a jury reasonably could have found necessary to compensate Plaintiff.  Plaintiff was harassed over about a four month period in 2003 and Plaintiff did not fully recover from the harassment until the summer of 2005.  Further, the award in this case does not shock the conscience or suggest mistake.  Accordingly, the Court will **DENY** AmSouth's motion for remittitur.


IV.    <u>**CONCLUSION**</u>

For the reasons stated above, the Court will **DENY** AmSouth's motion for judgment as a matter of law and/or new trial and/or remittitur.

An order shall enter.


**/s/**_____

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

_____

[7]  AmSouth asks the Court to act as a "thirteenth juror" as a Tennessee judge would when faced with a motion for remittitur (Court File No. 124, p. 20).  The Court is unaware of any Sixth Circuit case, and AmSouth cites none, which require district courts that are considering a motion for remittitur in a diversity case to apply state substantive law.  However, even if Tennessee substantive law applied here and the Court acted as a thirteenth juror, the Court would not reduce the jury award.

20

21